**Maurice BACKUS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 99,2003.

Supreme Court of Delaware.

Submitted: Feb. 10, 2004.

Decided: March 31, 2004.

Charles M. Oberly, III, Esquire, of Oberly, Jennings & Rhodunda, Wilmington, for Appellant.

Timothy J. Donovan, Jr., Esquire, of the Department of Justice, Wilmington, for Appellee.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices, constituting the Court en banc.

BERGER, Justice.

In this appeal, we consider whether an attempted pat-down search, which resulted in the discovery of 134 grams of cocaine, violated appellant's constitutional right to be free from unreasonable searches and seizures. Appellant argues that the police officer who stopped him had nothing but stale information that appellant might possess a gun and that he had been involved in criminal drug activity. Since there was nothing about appellant's behavior at the time of the stop to raise a suspicion of wrongdoing, he contends that the stop and pat-down search were unreasonable and, therefore, invalid. We disagree. Appellant had pulled up in front of his brother's home, where the police had reason to believe that the two men cooked cocaine. Based on the belief that appellant was about to engage in criminal activity (preparing cocaine for distribution), the police officer had the right to stop him. Since appellant was seen with a gun two months earlier, and drug dealers frequently carry guns, the police officer was justified in attempting to conduct a pat-down weapons search for his own safety. Accordingly, we affirm the Superior Court's denial of appellant's motion to suppress.

Factual and Procedural Background

On June 14, 2001, at about 9:40 p.m., a team of police officers from the New Castle County Police Department were executing a search warrant at the home of Floyd Backus, a suspected cocaine dealer. During a briefing before the search began, Detective Connie Jackson informed the other members of the team that: 1) Floyd and his brother, Maurice Backus, were under investigation for selling cocaine; 2) based on information from a reliable informant, the brothers cooked crack cocaine at Floyd's house; 3) Maurice's involvement in drug sales had been confirmed by three controlled purchases; 4) Maurice had been charged with weapons offenses in the past; and 5) based on information from a reliable informant, Maurice was seen in possession of a gun. In addition, Jackson displayed pictures of the two men and advised that Maurice drove a red Nissan Pathfinder.

Corporal Terrence O'Connor and his dog, Sinta, assisted in the execution of the search warrant. Initially, O'Connor and

Sinta stayed at the back of the house to apprehend anyone who might try to run out the back door. After receiving a signal that the house had been secured, O'Connor brought Sinta back to the police car, which was parked several houses away from Floyd's house. As O'Connor was driving up to Floyd's house, a red Nissan Pathfinder pulled to a stop in front of Floyd's house. O'Connor identified Maurice as he exited from the curb side of the vehicle. O'Connor immediately asked Maurice to place his hands on the side of the car and began a pat down search for weapons. Maurice responded by turning toward O'Connor, pushing him away, and then running. O'Connor chased him, tackled him, and eventually, with the help of two other officers, placed Maurice in handcuffs. At that point, Officer Charles Shepherd conducted the pat-down and discovered a bag containing 134 grams of cocaine.

## Discussion

■ Both the United States and Delaware Constitutions guarantee Maurice's right to be free from "unreasonable searches and seizures."[1] Thus, to justify stopping Maurice as he exited his vehicle, O'Connor must have had a "reasonable and articulable suspicion of criminal activity."[2] A reasonable and articulable suspicion means the ability to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion."[3] The reasonable articulable suspicion must support the belief that, "a crime had just been, was being, or was about to be committed."[4]

Maurice argues that he did nothing to arouse suspicion as he emerged from his car, and that the only reason for stopping him was stale information about drug sales and a gun. According to Maurice, if his stop is deemed constitutional, then police officers will be free to harass anyone with a criminal record. In addition, since O'Connor did not see anything that appeared to be a weapon, and since Maurice did not behave in a threatening manner, there was no basis for a pat-down search. Again, according to Maurice, O'Connor's vague and stale information about a gun was insufficient to justify the search.

■ In deciding whether O'Connor had a sufficient basis to stop Maurice, we "consider the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer... combining objective facts with such an officer's subjective interpretation of those facts."[5] The alleged "staleness" of O'Connor's information, likewise, depends on "all the facts as viewed in a flexible and practical manner."[6] Thus, where the information concerns "criminal activity of a continuous nature, the passage of time becomes less significant."[7] The same reasoning applies to evidence, such as a gun, that is not "subject to deterioration or change because of the passage of time...."[8]

1. U.S. Const. amend. IV; Del. Const. Art. I, § 6.

2. *Jones v. State*, 745 A.2d 856, 861 (Del.1999).

3. *Ibid.* quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

4. *Robertson v. State*, 596 A.2d 1345, 1350 (Del.1991).

5. *Jones v. State*, 745 A.2d at 861.

6. *Jensen v. State*, 482 A.2d 105, 112 (Del. 1984).

7. *Stroud v. State*, 1990 WL 43315 at *2 (Del. Supr.).

8. *Gardner v. State*, 567 A.2d 404, 410 (Del. 1989).

Considering all of the information known to the police, as well as the age of that information, we are satisfied that O'Connor acted reasonably in stopping Maurice and attempting a pat-down search. Maurice, with his brother, was known to be involved in the preparation and sale of cocaine; he had been seen with a gun two months earlier; and drug dealers frequently carry weapons. Thus, when Maurice pulled up and stopped in front of his brother's home, O'Connor had reason to believe that Maurice was about to engage in criminal activity—cooking cocaine—with his brother and that Maurice was armed.

This is not a case, as Maurice suggests, where someone was stopped on a public street just because that person had a criminal background. Although the briefing included a reference to Maurice's past weapons charges, the salient facts were that Maurice had been seen in possession of a gun two months earlier and was engaged in the continuing activity of selling cocaine. And the police did not stop Maurice on any public street. Maurice had just pulled up in front of his brother's home, where the police reasonably believed that Maurice and his brother prepared cocaine for sale. This combination of facts was sufficient to support the minimal intrusion of a brief stop and a pat-down search for weapons.

## Conclusion

Based on the foregoing, the judgment of the Superior Court is affirmed. It is ordered that the time within which a motion for reargument may be timely filed under Supreme Court Rule 18 is shortened to five days from the date of this Opinion. This is due to the impending change in the composition of the Supreme Court, arising from the retirement of the Chief Justice in April 2004.